UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERRON A. ADAMS,<br><br>    Plaintiff,<br><br>v.<br><br>LINA MANGLICMOT, et al.,<br><br>    Defendants. | Case No. 19-cv-07952-HSG<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 22 |

## INTRODUCTION

This is a federal civil rights action filed pursuant to 42 U.S.C. § 1983 by a pro se state prisoner. Plaintiff, an inmate at California Training Facility ("CTF"), alleges that defendants were deliberately indifferent to his serious medical needs by failing to assign him a lower bunk. (ECF No. 1.)[1] The Court GRANTS defendants' motion for summary judgment ("Motion"). (ECF No. 22.)

## FACTUAL BACKGROUND

This suit arises from defendants' decision not to assign plaintiff a lower bunk despite his history of seizures or to provide pain medication to control his seizures. Plaintiff contends that RN Manglicmot was deliberately indifferent to his serious medical needs when she failed to inform custody staff that plaintiff required a lower bunk assignment, despite knowing that plaintiff suffered from seizures. He also argues that RN Anudokem was deliberately indifferent when she made inappropriate comments to plaintiff and refused to provide him his prescribed pain medication. Defendants counter that (1) plaintiff fails to show that defendants were deliberately indifferent to his medical needs; and (2) they are entitled to qualified immunity. The following

---

[1] Defendants provided plaintiff with the required warnings under *Rand v. Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc). (ECF No. 22-29.)

facts are undisputed unless specifically noted otherwise.

      A.      <u>Allegations Against Manglicmot and Anudokem</u>[2]

Plaintiff has a documented medical history of suffering from seizures. (Gieschen Decl., Ex. B, ECF No. 22-9.) Plaintiff's medical records from an appointment at San Quentin State Prison (SQSP) on February 21, 2018, show that plaintiff was receiving seizure medication. (Gieschen Decl., Ex. C, ECF No. 22-10.) Plaintiff was transferred from SQSP to CTF's Receiving and Release Facility on February 28, 2018. (Compl. ¶ 4, ECF No. 1; Lozano Decl ¶ 6, ECF No. 22-26.) Prior to his transfer to CTF, plaintiff's last seizure took place in January of 2017. (Gieschen Decl., Ex. B.)

When an inmate arrives at one California Department of Corrections and Rehabilitation ("CDCR") facility from another CDCR facility, medical screening staff is expected to review the inmate's medical records and search for a CDCR 1845 Disability Placement Program Verification form ("Form 1845") and/or a CDCR 7410 Comprehensive Accommodation Chrono ("Form 7410"). (Gieschen Decl. ¶ 7, ECF No. 22-7.) Form 1845 documents an inmate's disabilities and Form 7410 documents an inmate's special accommodations irrespective of disability. (*Id.* ¶ 8.) Form 7410 documents such things as a lower bunk accommodation based on a history of seizures. (*Id.*) At the time plaintiff arrived at CTF, there was no Form 1845 or Form 7410 associated with plaintiff. (*Id.* ¶ 12.) Under CDCR and California Correctional Health Care Services ("CCHCS") policies and procedures, only physicians have the authority to decide whether an inmate should be assigned a lower bunk and to issue or change an accommodation chrono. (*Id.* ¶ 6.) Other medical professionals, including nurses, do not have that authority. (*Id.*)

Defendant RN Manglicmot conducted plaintiff's initial medical screening on February 28, 2018. (*Id.* ¶ 5.) Plaintiff contends that he informed Manglicmot that he suffered from seizures and needed a lower bunk chrono, to which she responded that lower bunks are for people with broken bones or who have had surgery. (Pl.'s Dep. 20:19-21:13, ECF No. 27.) When plaintiff mentioned the seizures again, plaintiff states that Manglicmot responded that plaintiff should shut

---

[2] The parties provide substantially more facts than presented below. The Court recites only the facts relevant to the claims.

up because she knows how to do her job. (*Id.*) On screening plaintiff, Manglicmot marked plaintiff as "High Priority." (Gieschen Decl. ¶ 16.) High priority patients are expected to be seen by a physician within 1 to 7 days. (*Id.*)

Plaintiff later arrived at Facility E, where he was assigned an upper bunk. (Pl.'s Dep. 65:8-66:7.) On March 1, 2018, at approximately 3:30 a.m., plaintiff suffered a grand mal seizure and fell from the top bunk onto the concrete floor, biting his tongue, and suffering pain in his head, back, shoulder, elbow, ankle, and thumb. (Compl. ¶¶ 19-20.) Plaintiff was transferred to a lower bunk on March 2, after the officer on duty spoke with a physician and was told to assign plaintiff a lower bunk because of his seizure. (Pl.'s Dep. 72:5-19.)

On August 17, 2018, plaintiff suffered a second grand mal seizure, landing on his back and hitting his head on the concrete. (Compl. ¶ 36.) Plaintiff was taken to the hospital where he received a CT Scan and was prescribed Tylenol. (Pl.'s Dep. 30:7-18.) Upon returning from the hospital, plaintiff was seen by RN Anudokem who attempted to take plaintiff's vitals. (Pl.'s Dep. 30:20-21.) Plaintiff states that Anudokem was unable to get a reading and told plaintiff he was a dead man and should be sent to the morgue. (*Id.* 30:21-22.) Plaintiff responded that he found the comment offensive, to which Anudokem replied that plaintiff was a "smart ass" and therefore would not receive his pain medication. (*Id.* 30:22-31:19.) Plaintiff further states that Anudokem purposefully did not put plaintiff's Tylenol prescription in the system. (*Id.*) Anudokem's medical notes from August 17, 2018, show that her treatment plan included "Tylenol for pain". (Gieschen Decl., Ex. F, p. 7.)

B. New Theory Against Manglicmot

In his opposition, plaintiff raises a new factual allegation not in the complaint. He now claims that upon his transfer to CTF, he observed transportation custody staff personally hand Manglicmot his five-day supply of seizure medication, which she deliberately refused to process in the computer.[3] (*See* ECF No. 26 at 4-6.)

---

[3] Plaintiff referenced a medication episode during his deposition, without alleging that he observed Manglicmot receive his medication and intentionally refuse to process it. The relevant testimony is as follows:

3

**PROCEDURAL BACKGROUND**

Plaintiff filed his complaint on December 4, 2019, naming numerous defendants. (ECF No. 1.) The Court ordered partial service finding that plaintiff stated cognizable claims for deliberate indifference to his serious medical needs against defendants Manglicmot, Lozano, Hardian, Anudokem, Deluna and Coleman. (ECF No. 4.) Following discovery, defendants filed this Motion. (ECF No. 22.) Plaintiff filed an Opposition, in which he conceded that summary judgment should be granted as to defendants Lozano, Hardian, Deluna and Coleman. (ECF No. 26 at 3.) Defendants filed a Reply (ECF No. 28), plaintiff filed a Supplemental Opposition to the Motion (ECF No. 29), a Sur-Reply (ECF No. 30), and a Supplemental Declaration in Support of his Opposition (ECF No. 32).

**STANDARD OF REVIEW**

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

---

> [W]hen I go to get my medication, my seizure medications not there, all my other medication is there. When I go to get my medication they say, "You're not on seizures." They say, "Look, you don't have nothing in here with no seizures.' They send me back to my cell."
>
> . . .
>
> I'm telling her I told the COs, "Hey, I have seizures. I just came in." But they had my other medication, but they didn't have my seizure medication. My seizure medication came with me, all my medication came with me from San Quentin. So I think that because I was trying to tell her to put me on the lower bunk she thought I was trying to tell her how to do her job and she got kind of -- it went kind of bad from there.

(Pl.'s Dep. 20:8-21:25).

4

issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). A verified complaint may be used as an opposing affidavit, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998) (treating allegations in prisoner's verified amended complaint as opposing affidavit). The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

**DISCUSSION**

Plaintiff alleges that the defendants were deliberately indifferent to his medical needs. Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (equating the standard with that of criminal recklessness). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* Consequently, in

1    order for deliberate indifference to be established, there must exist both a purposeful act or failure

2    to act on the part of the defendant and harm resulting therefrom.  *McGuckin v. Smith*, 974 F.2d

3    1050, 1060 (9th Cir. 1992) (overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104

4    F.3d 1133, 1136 (9th Cir. 1997) (en banc)).

5           The Supreme Court has further clarified this standard by holding that "it is obduracy and

6    wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the

7    Eighth Amendment."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  A mere accident or evaluative

8    mistake is not to be characterized as wanton infliction of unnecessary pain.  *Estelle*, 429 U.S. at

9    105.

10          A plaintiff must show that his doctors or nurses embarked on a course of "medically

11   unacceptable" treatment in "conscious disregard of an excessive risk to [his] health."  *Toguchi v.

12   Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004).  A claim of medical malpractice, negligence

13   related to medical problems, or a difference of opinion between a prisoner patient and a medical

14   doctor, is not enough to make out a violation of the Eighth Amendment.  *Id.*; *Franklin v. Oregon*,

15   662 F.2d 1337, 1344 (9th Cir. 1981).  "[A]n inadvertent [or negligent] failure to provide adequate

16   medical care alone does not state a claim under § 1983."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th

17   Cir. 2006) (alternation in original) (citation and quotation marks omitted).  Even if prison officials

18   know of a substantial risk to an inmate's health, they may not be found liable if they responded

19   reasonably to the risk, even if the harm was not averted.  *Farmer*, 511 U.S. at 844-45.

20          A.      RN Manglicmot

21          Plaintiff alleges that Manglicmot failed to inform the on-duty supervisor that his medical

22   condition required that he be assigned a lower bunk, despite his documented history of seizures.

23   He asserts that Manglicmot's indifference caused harm to him when he fell from the top bunk on

24   March 1, 2018, after experiencing a grand mal seizure.  In his opposition papers, plaintiff raised

25   the new factual allegation that Manglicmot deliberately failed to process his seizure medication

26   after receiving it from transportation staff.[4]  Plaintiff has not shown evidence that Manglicmot's

---

[4] The Court finds that plaintiff's new theory should be disregarded as both untimely and unexhausted.  *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ("[A] new

actions amounted to deliberate indifference.

The Court first notes that the risk of harm due to falling from a top bunk during a seizure is an objectively serious risk of harm. *See Ramos v. Monteiro*, No. CV 06-0832-GAF JTL, 2009 WL 1370998, at *14-15 (C.D. Cal. May 14, 2009) (finding that plaintiff had adequately alleged that, based on his medical condition, an upper bunk posed a substantial risk to his safety to support a claim of deliberate indifference).

However, with respect to the subjective prong of a deliberate indifference claim, plaintiff has not shown facts that Manglicmot knew that denying plaintiff a lower bunk presented a substantial risk of serious harm to plaintiff, but nonetheless deliberately disregarded that risk. *See Farmer*, 511 U.S. at 837-39. Plaintiff did not have a Form 1845 or Form 7410 on file, which would have documented any bed accommodations. In fact, plaintiff concedes that he did not have such an accommodation: "[t]here was no accommodation chrono in . . . [the] file for a low bunk assignment[.]" (ECF No. 26 at 16.) Without a documented lower bunk accommodation, Manglicmot, as an RN, was not in a position to assign plaintiff a lower bunk. Manglicmot's medical notes show that she did, however, consider plaintiff a high priority to meet with a

---

theory of liability at the summary judgment stage would prejudice the defendant who faces different burdens and defenses under this second theory of liability.") (citations omitted). The Court's obligation to read the pleadings liberally in *pro se* cases extends to facts actually contained in the pleadings, but does not confer any right to present new facts and theories at the opposition stage. Plaintiff's passing reference during his deposition to a medication issue when he was transferred to CTF also failed to plead this claim sufficiently. Although the Court must construe *pro se* pleadings liberally, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987); *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.") (internal quotations omitted); *Ortiz v. Lopez*, 688 F.Supp.2d 1072, 1082 (E.D. Cal. 2010) ("[A] plaintiff cannot oppose summary judgment based on a new theory of liability because it would essentially blind side the defendant with a new legal issue after the bulk of discovery has likely been completed.").

Plaintiff also concedes that he did not administratively exhaust this claim. (ECF No. 30.) He states that in place of a grievance, he filed a healthcare services request about his seizure medication and received the medication shortly after. (*Id.*) He also states that he was told by a fellow inmate that he did not need to file a grievance concerning the matter. (*Id.*) These explanations fail to adequately show that administrative remedies were "effectively unavailable to him." *See Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). Considering that plaintiff filed twenty grievances during his time at CTF and filed at least five grievances concerning the matters in this case (*see* Martin Decl. ¶¶ 9-10, ECF No. 22-14), the Court is not persuaded by plaintiff's explanation for his failure to exhaust this claim.

physician.

In addition, plaintiff's medical records establish that he suffered a seizure in January of 2017, over a year prior to his transfer to CTF, which took place on February 28, 2018. CCHCS Guidelines state that an inmate qualifies for a bottom bunk as follows: "[p]atients with a documented motor seizure in the last year or a reduction or change of seizure medication within the last six months." (Gieschen Decl., Ex. A, p. 3.) Thus, while it is true that plaintiff's history of seizures was well-documented in his medical files, the Guidelines show that he was not necessarily entitled to a bottom bunk based on those records.

Plaintiff takes issue with Manglicmot's harsh and dismissive response to his request for a lower bunk, and her failure to speak with a supervisor following his requests. However, the record reflects that Manglicmot marked plaintiff as a high priority patient to see a physician, and that nothing in plaintiff's medical records conclusively established that he was entitled to a lower bunk accommodation. At most, Manglicmot's failure to speak with a physician during plaintiff's initial medical screening amounted to negligence. *See Jett*, 439 F.3d at 1096; *Walter v. Lancaster State Prison Med. Dep't*, No. CV 09-3932, 2010 WL 2680535, at *6 (C.D. Cal. May 27, 2010) (medical personnel's "failure to check Plaintiff's medical file based on his statements about his medical condition and assign him a lower bunk amounts, at most, to negligence."), *report and recommendation adopted*, No. CV 09-3932, 2010 WL 2680537 (C.D. Cal. July 1, 2010)).

Plaintiff argues that he was assigned a lower bunk at SPSC and at Santa Rita County Jail, showing that he should have received a lower bunk at CTF. He explains that he did not have any forms establishing his lower bunk assignment at SPSC because "you can just go into the cell and get on the lower bunk[.]" ( ECF No. 26 at 22.) Regarding his records from Santa Rita County Jail, plaintiff attaches a document that states "Lower Level/Lower Bunk Restriction," "Date Added 05/22/2017," "Date Removed 10/03/2017". (ECF No. 32 at 5.) While plaintiff appears to have been assigned lower bunks in the past, there is nothing in the record showing that plaintiff had an active lower bunk accommodation at the time he was transferred to CTF. Without more, there are no facts in the record suggesting that Manglicmot knew of and disregarded "an excessive risk to inmate health or safety" in failing to assign plaintiff a lower bunk, or speak with a

1    supervisor on his behalf.  *Farmer*, 511 U.S. at 837.

2        Plaintiff also points to the CDCR and CCHCS Health Care Department Operations Manual
3    which says "[a] provider may initiate a request for an accommodation based on medical necessity.
4    . . ."  (*See* ECF No. 26 at 49.)  As an initial matter, there is no Section 1983 liability for violating
5    prison policy unless doing so also violates a specific constitutional right.  *See Cousins v. Lockyer*,
6    568 F.3d 1063, 1070 (9th Cir. 2009) ("there is no § 1983 liability for violating prison policy.
7    [Plaintiff] must prove that [the officials] violated his constitutional right.")  In addition, this policy
8    leaves it up to the provider to determine whether to initiate a request for an accommodation but
9    does not mandate any action.  As already explained, Manglicmot's failure to initiate a request for
10   an accommodation was, at most, an act of negligence.

11       Finally, plaintiff argues that Manglicmot failed to take any action on his behalf "to get
12   back at plaintiff for trying to tell her . . . how to do her job."  (ECF No. 26 at 16.)  That conclusion
13   is speculative, because he lacks any insight into Manglicmot's subjective decision-making.  *See*
14   *Nelson v. Pima Community College*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere . . .
15   speculation[does] not create a factual dispute for purposes of summary judgment.") (citation
16   omitted)).  And overall, there is nothing in the record which raises a genuine dispute of material
17   fact that Manglicmot knew plaintiff faced "a substantial risk of serious harm" but "disregard[ed]
18   that risk by failing to take reasonable steps to abate it."  *Farmer*, 511 U.S. at 837.  Accordingly,
19   Manglicmot's motion for summary judgment is GRANTED.

20       B.    RN Anudokem

21       Plaintiff contends that Anudokem purposefully failed to process plaintiff's prescription for
22   Tylenol, even though he was prescribed this medication at the hospital.  (ECF No. 26 at 19.)  He
23   also argues that Anudokem was required to document the medication in his health care record and
24   notify his primary care provider of any immediate medication or follow-up requirements.  (*Id.*)
25   He contends that Anudokem failed to process the prescription because she was angry that plaintiff
26   spoke back to her.  (*Id.*)  Plaintiff has not shown evidence precluding summary judgment.

27       The medical records from plaintiff's visit with Anudokem show that she entered "Tylenol
28   for pain" into plaintiff's treatment plan.  (Gieschen Decl., Ex. F.)  In his opposition to the Motion,

9

plaintiff acknowledges that Anudokem put the Tylenol prescription in the system, but he argues that she was required, under prison policy, to notify the primary care provider of any "immediate medication or follow-up requirements." (ECF No. 26 at 24.) As previously explained, there is no Section 1983 liability for violating a prison policy unless doing so also violates a specific constitutional right. *See Lockyer*, 568 F.3d at 1070. In addition, there is nothing in the record showing that the Tylenol prescription was needed as an "immediate medication" or contained any "follow-up requirements". In fact, plaintiff provides no records pertaining to his August 17, 2018 visit to the hospital, at which the Tylenol was prescribed. These facts do not suggest that Anudokem's care was carried out with deliberate indifference to plaintiff's needs.

Plaintiff also appears to link the fact that he did not receive Tylenol for 30 days with the fact that Anudokem called him a "smart ass" and told him he would not receive his pain medication. (*Id.*) However, plaintiff acknowledges that Anudokem was not in charge of dispensing his medication, and he agrees that Anudokem did input Tylenol into his treatment plan. (*See* ECF No. 26 at 18-19.) Thus, insofar as he did not receive his Tylenol medication, plaintiff fails to provide competent evidence showing that it was due to Anudokem's actions. To the extent plaintiff is arguing that Anudokem was involved in a conspiracy to deny him Tylenol with the prison employee in charge of dispensing his medication, that argument is speculative and insufficient to raise a triable issue of fact. *See Nelson*, *supra*, 83 F.3d at 1081–82.

Finally, plaintiff argues that Anudokem displayed deliberate indifference when she called him a "smart ass" and told him he would not get his medication. While plaintiff found her comment offensive, he has not shown that Anudokem failed to respond to his medical needs resulting in harm to him. Such a showing is necessary to state a claim of deliberate indifference. *See McGuckin*, 974 F.2d at 1060 (explaining that in order for deliberate indifference to be established, "there must be a purposeful act or failure to act on the part of the defendant" and resulting harm.) There is simply nothing in the record to show that Anudokem prevented plaintiff from receiving his Tylenol medication, or conspired with any other prison staff to prevent him from receiving that medication. In sum, plaintiff has not shown evidence to preclude summary judgment as to Anudokem. For these reasons, Anudokem's motion for summary judgment is

GRANTED.[5]

## CONCLUSION

Because plaintiff fails to show a genuine dispute of material fact, defendants' motion for summary judgment (ECF No. 22), is GRANTED.  The Clerk shall enter judgment in favor of defendants, terminate ECF No. 22, and close the file.

**IT IS SO ORDERED.**

Dated: August 25, 2021

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[5] The Court need not address defendants' arguments as to qualified immunity because the Court has found that plaintiffs' constitutional rights were not violated.

11